IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ANDREW JOSEPH DICKS, #336-138,    :

   Plaintiff,    :

   v.    :    Civil Action No. GLR-17-2554

WARDEN FRANK BISHOP, JR., et al.,    :

Defendants.    :

## MEMORANDUM OPINION

THIS MATTER is before the Court on a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment filed by the Medical Defendants, Nurse Practitioner Janette Clark ("Clark"), Nurse Practitioner Krista Self ("Self," also known as Krista Bilak or Krista Swan), and Registered Nurse Robert Claycomb ("Claycomb"). (ECF No. 21). The Court, having reviewed the Motions and supporting documents, finds no hearing necessary. See Local Rule 105.6 (D.Md. 2016). For the reasons outlined below, the Court will grant the Motion to Strike Surreply and will grant the Medical Defendants' dispositive Motion.

### I.    BACKGROUND

In a Complaint filed August 31, 2017, Plaintiff Andrew Joseph Dicks, a Maryland prisoner currently incarcerated at Patuxent Institution in Jessup ("Patuxent"), alleged unconstitutional conditions of confinement and denial of medical care, in violation of his First, Fourth, Eighth and Fourteenth Amendment rights. (Compl. at 3, ECF No. 1). Dicks' allegations, for which he seeks money damages and injunctive relief, are directed

at correctional and medical personnel employed at North Branch Correctional Institution ("NBCI") and encompass a period between October 7, 2014 and October of 2017,[1] prior to his transfer from NBCI to Patuxent.[2]

Dicks states that on July 4, 2015, he slipped while climbing into his top bunk, injuring his neck and shoulder and exacerbating his chronic back pain. (Id. at 17). He claims he never should have been assigned a top bunk, due to a 2012 knee injury requiring him to use a cane. (Id.). Dicks claims he reported his injury to medical personnel who gave him four Motrin and an x-ray, but provided no further diagnostic testing. (Id. at 18). Corrections personnel kept him from a July 9, 2015 follow-up visit. (Id.). He renewed his sick call request on July 20, 2015, and was seen by Clark on July 28, 2015. (Id. at 19). Clark discussed the x-ray results, suggested Dicks try yoga stretching, and provided no further assessment. (Id.).

Dicks states that after the July 4, 2015 injury, medical personnel did not provide an order mandating his assignment to a bottom bunk, and Claycomb refused his September 12, 2015 request for a bottom bunk. Dicks claims he slept on the floor of his cell from the date of his injury until October 26, 2015. (Id. at 19–20).

Dicks claims that on January 11, 2016, Bilak responded to his sick call request concerning neck and shoulder pain. He claims Bilak did not address his neck and shoulder pain, but increased the medications he used to alleviate his back spasms. (Id. at

---

[1] Dicks notified the Clerk of his transfer and new address on October 27, 2017. (See ECF No. 6). The precise date of his transfer is not apparent in the record.
[2] Allegations against the Correctional Defendants will be addressed in a separate Memorandum Opinion.

20). Dicks states that his March 3, 2016 sick call request was answered on March 23, 2016. At that visit, he was promised back pain treatment and physical therapy, but neither modality was provided. (Id.).

The Medical Defendants provide a somewhat different interpretation of Dicks' medical care. Dicks, in his mid-forties, suffers from esophageal reflux, back pain, neck pain, hypertension, dermatitis, and bipolar disorder. (See generally Joubert Aff., ECF No. 21-5).

Relevant to the Complaint, on July 4, 2015, Dicks reported to the medical unit and was seen by Registered Nurse Tammy Buser. (Defs.' Mot. Dismiss Summ. J. Ex. 1 at 2–3, ECF No. 21-4). Buser assessed his gait as steady, but noted he was bent over. (Id.). Dicks could move his shoulder and extend his arm, but felt pain. His neck and upper back also hurt, and was stiff when moving his head and neck. (Id.). Buser determined the injury was muscular, but ordered x-rays, provided Motrin, and referred Dicks to a provider. (Id.). X-rays shows mild degenerative changes in the right shoulder with no evidence of an acute fracture, dislocation, or subluxation. (Id., at 4).

On July 24, 2015, Dicks reported to nurse sick call complaining of neck and should pain so severe he could barely lift his arms. (Id. at 6). Palpation shows right side pain and slight swelling was present. Dicks was in handcuffs and could not demonstrate range of motion, but stated he could use the arm normally. He was referred to a provider. (Id.).

Four days later, on July 28, 2015, Dicks was seen by Clark, who reviewed his x-rays. He reported the right should still hurt. At the time, Dicks was taking prescription

3

medications, including Tegretol, Mobic, Naproxen, and Baclofen. (Id. at 7–8). He reported this combination of medications helped, and no changes to this medication regimen were made. (Id.). Examination revealed right shoulder had anterior tenderness, normal extremities, and no kyphosis or scoliosis (curvature) of the spine. Clark suggested Dicks try some yoga books in the library for ideas on how to stretch his muscles and alleviate his stiffness. (Id.).

On September 9, 2015, Dicks met with Self to review lab results, adjust his chronic back pain medications, and issue an order for clippers for one year (rather than a razor), for shaving to mitigate atopic dermatitis rash. (Id. at 9–10). Self noted Dicks was on a minimum dose of Mobic and Naproxen, which would be increased before other medications would be changed. Dicks' prescription dose for Mobic was increased from 7.5mg to 15mg, and the Naproxen dose was increased from 250 mg to 500 mg. (Id.). Dicks voiced no complaint specific to his neck, shoulder or back. (Id.).

Three days later, on September 12, 2015, Dicks was seen at nurse sick call by Claycomb, to obtain paper work for use of the clippers and to request a bottom bunk. (Id. at 11–12). Dicks, who complained of gastric reflux, walked with a steady gait and was able to get on and off the exam table without difficulty. He stated he used Prilosec twice daily for heartburn, even though the prescription was only for once daily. Dicks had an esophagogastroduodenoscopy ("EGD") in 2009 and wanted another, due to right neck pain with swallowing and right chest burning during and after eating. (Id.). He was referred to a provider to obtain an order for the bottom bunk and EGD testing. (Id.).

4

On September 27, 2015, Dicks complained to Claycomb at nurse sick call that his Baclofen prescription had not been increased. (Id. at 13–14). He was informed that his Naproxen was increased instead, a decision Dicks said was not supposed to happen. He showed no acute distress and had a steady gait. Dicks was referred to a provider for evaluation. (Id.).

On November 13, 2015, Dicks complained to Dr. Ashraf of a sore throat, and requested the renewal of all his medications. (Id. at 15–16). The medications were all current, with the exception of ointment for rashes. Examination was unremarkable. (Id.).

Dicks reported to nurse sick call on December 13, 2015, complaining of shoulder, knee, and back pain that had started around December 1, 2015. (Id. at 17–18). He had a steady gait and straight back, with a good range of motion of the shoulder, and no swelling in the back of the knee, which also had a good range of motion. (Id.).

On January 10, 2016, Dicks complained to Self of a sore throat, skin lesions, and back pain with muscle spasms. (Id. at 19–20). He had nasal swelling and his throat and tonsils were red. Dicks showed muscle spasm in the back without tenderness. Throat cultures were taken and Baclofen was increased to 20 mg twice daily. (Id.).

On April 6, 2016, Dicks complained to Dr. Ashraf of low back pain that had returned despite medication. (Id. at 21–22). His Baclofen prescription of 20 mg was increased to twice daily, and Dicks was started on Amitriptyline 50 mg at bedtime. Dr. Ashraf noted he would discuss physical therapy with the regional provider. (Id.).

On April 26, 2016, Dicks complained at nurse sick call that the medications made him sick. (Id. at 23–24). Self ordered the Amitriptyline decreased to 25 mg. (Id.).

On April 28, 2016, Dicks was unable to attend physical therapy, which then began on May 17, 2016. (Id. at 25–26). He stated a two-year history of low back pain caused by a weight lifting injury. (Id. at 26). He exhibited a non-antalgic gait and postural transitions, intact lordosis, and trunk range of motion within normal limits, and was assessed as having lower sacroiliac joint sprain. (Id.).

One month later, on July 29, 2016, Dicks told the nurse at sick call that Dr. Barrera had prescribed Neurontin and Tramadol for his back, shoulder, and knee pain. (Id., pp. 27-28). The nurse contacted a physician, and Dicks was informed that there was no current order for Neurontin or Tramadol. (Id.).

On August 30, 2016, Dicks told Dr. Ashraf his low back pain had increased in the last few weeks. (Id. at 29–31). X-rays of the lumbar and cervical spine were ordered, and Dicks was prescribed Tramadol 50 mg twice daily for a 60 day period. Examination revealed weakness, back pain, myalgia and rheumatologic manifestations, but no edema was present. (Id.). X-rays of the lumbar and cervical spine taken on September 6, 2016 showed no acute osseous abnormality. (Id. at 32–33). On September 27, 2016, Dicks requested renewal of his pain medications, and noted he was getting some relief from pain. (Id. at 34).

During his November 1, 2016 annual physical exam, Dicks had normal musculature and no skeletal tenderness or joint deformity. He was assessed as stable. (Id. at 35–36).

The Medical Defendants filed their Motion on January 24, 2018. (ECF No. 21). The Motion is opposed by Plaintiff Andrew J. Dicks. (ECF No. 29). The Medical Defendants have filed a Reply to Dicks' opposition Response. (ECF No. 32). Dicks filed a Surreply (ECF No. 33), which the Medical Defendants move to strike. (ECF No. 34).

## II. DISCUSSION

### A. Standard of Review

The Medical Defendants' Motion is styled as a motion to dismiss under Rule 12(b)(6) or, in the alternative, for summary judgment under Rule 56. Motions styled in this manner implicate the Court's discretion under Rule 12(d). See Kensington Vol. Fire Dep't., Inc. v. Montgomery Cty., 788 F.Supp.2d 431, 436–37 (D. Md. 2011), aff'd, 684 F.3d 462 (4th Cir. 2012). This Rule provides that when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). The Court "has 'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'" Wells-Bey v.Kopp, No. ELH-12-2319, 2013 WL 1700927, at *5 (D. Md. Apr. 16, 2013) (quoting 5C Wright & Miller, Federal Practice & Procedure § 1366, at 159 (3d ed. 2004, 2012 Supp.)).

Here, Dicks was on notice that the Court might resolve Defendants' Motion under Rule 56 because Defendants styled their Motion in the alternative for summary judgment and presented extensive extra-pleading material for the Court's consideration. See Moret v. Harvey, 381 F.Supp.2d 458, 464 (D. Md. 2005). In addition, the Clerk informed Dicks about the Motion and invited his opposition thereto, and Dicks filed an Opposition that included extra-pleading materials in support of his claims.[3] Accordingly, because the Court will consider documents outside of Dicks's Complaint in resolving Defendants' Motion, the Court will treat the Motion as a motion for summary judgment.

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. Ricci v. DeStefano, 557 U.S. 557, 586 (2009); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when the movant demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A). Significantly, a party must be able to present the materials it cites in "a

---

[3] A surreply is permitted when the moving party would be unable to contest any matters raised by the opposing party in their reply for the first time. See Lewis v. Rumsfeld, 154 F. Supp.2d 56, 61 (D. D.C. 2001). Unless otherwise ordered, a surreply is not permitted. See Local Rule 105.2(a) (D. Md. 2016). Defendants have not raised new matters for the first time in their Reply, and move to strike the surreply. (ECF No. 34). The filing of a surreply in this case will not be permitted, and Defendants' Motion to Strike shall be granted.

form that would be admissible in evidence," Fed. R. Civ. P. 56(c)(2), and supporting affidavits and declarations "must be made on personal knowledge" and "set out facts that would be admissible in evidence," Fed. R. Civ. P. 56(c)(4).

Once a motion for summary judgment is properly made and supported, the burden shifts to the nonmovant to identify evidence showing there is genuine dispute of material fact. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). The nonmovant cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." Othentec Ltd. v. Phelan, 526 F.3d 135, 141 (4th Cir. 2008) (quoting Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985)).

A "material fact" is one that might affect the outcome of a party's case. Anderson, 477 U.S. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; accord Hooven-Lewis, 249 F.3d at 265. A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 248. If the nonmovant has failed to make a sufficient showing on an essential element of her case where she has the burden of proof, "there can be 'no genuine [dispute] as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case

necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986).

**B.     Analysis**

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain," Gregg v. Georgia, 428 U.S. 153, 173 (1976). Scrutiny under the Eighth Amendment "is not limited to those punishments authorized by statute and imposed by a criminal judgment." De'Lonta v. Angelone, 330 F. 3d 630, 633 (4th Cir. 2003). In the context of delay or denial of medical care, an Eighth Amendment violation arises when the actions of a defendant, or the failure to act, amount to deliberate indifference to a serious medical need. See Estelle v. Gamble, 429 U.S. 97, 105–06 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. See Farmer v. Brennan, 511 U.S. 825, 837 (1994).

The subjective component requires "subjective recklessness" in the face of the serious medical condition. Farmer, 511 U.S. at 839–40. True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk. Rich v. Bruce, 129 F.3d 336, 340 n.2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter thus becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" Brice v. Virginia Beach Corr. Ctr., 58 F.3d 101, 105 (4th Cir. 1995) (quoting Farmer, 511 U.S. at 844).

In his Opposition, Dicks claims the medical care provided was negligent because additional diagnostic testing, such as MRI, was not done to assess his shoulder injury. He further claims the Medical Defendants should have realized the order placing him in a bottom bunk, issued on May 31, 2014, had expired, and acted to renew the order. He states he repeatedly asked for renewal of bottom bunk status, but was ignored.

In addition, Dicks disputes medical assessment that his shoulder and arm moved normally and argues that medical personnel increased the strength of his pain medications because they realized he was in pain, even though they did not try to "fix...the problem." (Pl.'s Opp. at 11, ECF No. 29). He contends that actual physical therapy sessions (as opposed to an initial assessment) never occurred. He seemingly complains that treating his neck and shoulder pain with the same medications used to treat his back pain was improper.

There is no dispute, however, that the Medical Defendants have responded to Dicks's various health problems, including those stemming from his July 4, 2015 fall from an upper bunk. While he assumes that a different pain medication must be prescribed for each body part (back, knees, shoulder, and neck), any failure of the Medical Defendants to treat Dicks in that precise manner does not amount to a constitutional violation.

Based on Dicks' exhibit, it appears his bottom bunk status expired at the end of May, 2015, five weeks prior to his fall from a top bunk. Dicks claims, alternatively, that the Medical Defendants were obliged to automatically renew the bottom bunk order, and that Dicks asked for renewal but was ignored. Based on the record here, the Eighth

Amendment does not require automatic renewal of a medical order. Similarly, Dicks states that after the July 4, 2015 injury, medical personnel did not provide an order mandating his assignment to a bottom bunk. There is no evidence in the record, however, that Dicks asked for such an accommodation prior to September 12, 2015, when Claycomb noted the request during a medical visit addressing pain associated with reflux.

Dicks filed an Administrative Remedy Procedure ("ARP") grievance on July 20, 2015, complaining that medical personnel had not yet provided him the results of the shoulder x-ray and had neglected to renew his expired order for a bottom bunk. (ECF No. 1, separately filed Ex. 3, p. 2). His ARP further complained that the Department of Public Safety and Correctional Services ("DPSCS") had breached its duty to provide ladders or some means to help prisoners safely reach their top bunks.[4] The medical record reflects a request for bottom bunk status was directed to medical personnel only during Dicks's September 12, 2015 visit.[5]

To the extent Dicks argues his pain medication is ineffective, evidence of unsuccessful medical treatment, such as the inability to reduce pain, is insufficient to establish deliberate indifference. Baez v. Falor, 2012 U.S. Dist. LEXIS 138574, 103, 2012 WL 4356768 (W.D.Pa. 2012) (citing Thomas v. Coble, 55 F.App'x 748, 749 (6th Cir. 2003); Rochell v. CMS, No. 4:05CV268, 2006 U.S. Dist. LEXIS 37943, at 10 (N.D.

---

[4] The Court notes that during this period, on August 15, 2015, Dicks also availed himself of the ARP process to complain that he had been denied use of clippers ordered by medical personnel. (Compl. Ex. 1 at 5, ECF No. 1).

[5] Dicks provides copies of his medical record concerning care provided prior to July 4, 2015. These records do not reflect that he was regularly provided one-year orders for bottom bunk status, nor that he asked for bottom bunk renewal after the one-year order expired at the end of May, 2015. (Compl. Ex. 3 at 1–18, ECF No. 1).

Miss. April 10, 2006) ("The constitution does not . . . guarantee pain-free medical treatment . . . While the plaintiff might have preferred stronger medication, his mere disagreement with his medical treatment does not state a constitutional claim.").

To the extent Dicks brings any negligence or medical malpractice claims, the Court declines to consider them. District courts may decline to exercise supplemental jurisdiction over a state claim if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). District courts "enjoy wide latitude" in making this determination. Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir. 1995). Because Dicks cannot prevail on his constitutional claims—over which the Court has original jurisdiction—this Court declines to exercise supplemental jurisdiction under § 1367(c)(3) and (4) over Dicks' state law claims.

## III. CONCLUSION

For the foregoing reasons, the Court will grant the Motion to Dismiss or for Summary Judgment filed by the Medical Defendants (ECF No. 21) and grant the Medical Defendants' Motion to Strike Surreply. (ECF No. 33). A separate Order follows. Entered this 20th day of August, 2018.

/s/
George L. Russell, III
United States District Judge